With respect for the Supreme Court and a proper sense of duty to follow its decisions, I joined with my associates in deciding the case of State, ex rel. Bowers, Pros. Atty., v. MaumeeWatershed Conservancy District, 98 Ohio App. 111,128 N.E.2d 208, approving the opinion written by Judge Griffith as well as concurring in the judgment or decree.
Since that decision I have given much consideration to the propositions of law involved in that as well as the instant case, and now with all respect for the Supreme Court I find this an opportune time to express my considerate views with reference to the legality of the tax levy authorized by Section 6101.45, Revised Code, formerly Section 6828-43, General Code, to defray the preliminary expenses of establishing conservancy districts under authority of Section 36, Article II, Constitution of Ohio. I take it for granted that a judge of the Supreme Court who writes a dissenting opinion in a cause before that tribunal does not thereby show lack of respect for the court. Neither do I intend any lack of respect at this time in expressing my views concerning the decision of the Supreme Court in State, ex rel.Lewis, Pros. Atty., v. Scioto-Sandusky Conservancy District,160 Ohio St. 155, 113 N.E.2d 633. I do disagree with that decision for the following reasons:
Section 36, Article II, Constitution of Ohio, clearly clothes the General Assembly with authority to pass laws for the establishment of conservancy districts, as separate and distinct political entities, the authority granted by the Constitution necessarily implying that such laws may provide for raising the money necessary for the purpose of defraying the cost of establishing such districts. By Section 6101.45, Revised Code, the General Assembly has merely provided the means by which the "preliminary" costs of the surveys, plans, and other necessary *Page 73 
expenses may be raised "up to the time money is received from the sale of bonds" or otherwise, in no way increasing the burden which finally must be borne by the real property located in the district and benefitted by its establishment. The constitutional provision places no limitation, either actual or to be implied, as to the language which may be used by the General Assembly in passing laws for the establishing of such districts other than that the levies made shall not exceed the appraised benefits arising from the establishment thereof.
It certainly was not contemplated by the electors in adopting Section 36, Article II, as an amendment to the Constitution, that the extravagance or necessities of a single county of such district would require the electors of the entire district to approve the method of providing the money necessary therefor, and by their disapproval defeat the purposes of the constitutional amendment, the benefits of which were then anticipated and have long since been demonstrated.
Surely it must have been apparent to the electors, in voting for the adoption of the amendment, that surveys and plans and plats must be procured preliminary to the accomplishment of the purposes of the amendment "up to the time money is received from the sale of bonds." It is inconceivable that the electors expected there would be voluntary contributions amounting to hundreds of thousands of dollars to pay such preliminary expenses, hence the broad and unlimited authority reposed in the General Assembly to provide therefor and thus insure the benefits anticipated. What this constitutional amendment authorized cannot be declared unconstitutional by reason of the subsequently adopted Section 2, Article XII, limiting general taxation "for all state and local purposes," to one per cent of the true value in money of property, since there is no language in Section 2, Article XII, or the schedule thereto, which clearly evinces an intention of the electors to abolish or limit the authority granted to the General Assembly to pass laws for the establishing of conservancy districts. All that the schedule does or says is to make sure that laws previously passed shall remain valid although the levies provided may exceed one per cent. This is far from providing that like levies cannot be passed in the future, and it certainly did not extinguish the right to levy assessments according to benefits. *Page 74 
It is too well settled to admit argument to the contrary that special assessments levied according to benefits may be levied without submission to any budget commission and without necessity of approval by a majority of the electors, although assessments are a form of taxation but not for general purposes.
In the Lewis case the Supreme Court has made a fine distinction between "tax" and "assessment" and it seems to be conceded that had the General Assembly used the phrase, assessment according to benefits, instead of the words "preliminary tax" on the assessed value of the property in the district, the levy would be valid. I do not understand that the Supreme Court meant to hold invalid assessments made according to benefits to retire bonds authorized by the conservancy act. Hence I can find no reason for the distinction between "tax" and "assessment." Prior to the decision in the Lewis case all the courts of Ohio had accepted the view expressed in the opinion of the Supreme Court in County of Miami v. City of Dayton, 92 Ohio St. 215,110 N.E. 726, wherein it is said at page 229:
"Now the language of the act uses the word `tax,' but the word `tax' is a general term and is used frequently as a general tax, or as a local and special tax, in which latter instance it is more frequently spoken of as an `assessment.' Indeed, it has been repeatedly held that the word `tax' is sufficiently general and comprehensive to include the word `assessment.' The very fact that personal property is excluded from bearing the cost of the improvement and that the word `property' is held to mean by the terms of the act to be real property, forces us to the conclusion that it was the intention of the Legislature to provide for the cost of the improvement by way of assessment, as in other drainage cases.
"Courts will not limit themselves to the form and name of things. It is their duty to probe deep enough to get at the substance and the essence of the thing by whatever name or brand it may be known. The whole spirit of the law and its provisions in connection with its practical operation unmistakenly indicate that the Legislature used this word `tax' in its local and special sense. In short, as an `assessment.'"
In so speaking the Supreme Court was interpreting the very act involved in this case. Is it not reasonable to believe *Page 75 
that the electors in adopting Section 2, Article XII, providing for limitation on taxing power understood what the Supreme Court had previously said in interpreting the language used in Section 6828-43, General Code?
Now, whether we consider the word "tax" in the sense interpreted by the Supreme Court in the Lewis case, or in the sense of an "assessment" as interpreted by the Supreme Court inMiami v. Dayton, supra, one thing stands out irrefutably. The levy by whatever name is applied to it was for the purpose of defraying the necessary costs and expenses of establishing the district until bonds are issued for that purpose in accordance with Section 6101.47, Revised Code, levy for the retirement of such bonds being authorized by Section 6101.48, Revised Code, no budgetary action or approval by the electors being required, the levy of such assessments being specifically limited according to benefits.
It necessarily follows in this action, wherein plaintiff filed in the chancery court its petition for injunctive relief, no irreparable loss or damage has been suffered by the plaintiff and the decree of this court, wherein appeal has been filed by defendant on questions of law and fact, must be for the defendant, the Scioto-Sandusky Conservancy District. I specifically hold that the Pennsylvania Railroad Company, as well as those it assumes to represent, is entitled to neither injunctive relief nor the return of the so-called taxes paid, since it has paid nothing more than it be required to pay as assessment according to benefits to retire bonds issued for the purpose of defraying all the expenses of organization and maintenance of the district, including the preliminary expenses for which the board of directors attempted to levy a so-called tax, but which was the equivalent of an assessment.
Finally, in considering the constitutionality of Section6101.45, Revised Code, before it shall be held unconstitutional, it must appear that the statute permits something which the Constitution prohibits or prohibits something which the Constitution permits, and this conflict must be so clear that it is beyond reasonable doubt. It is submitted that when there is reasonable doubt as to such conflict, that doubt must be resolved in favor of the statute and its validity upheld. *Page 76